UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:21-cv-220

| | |
|---|---|
| ARIELLE WHITAKER,<br><br>    Plaintiff,<br><br>v.<br><br>CASTLE BRANCH, INC.,<br><br>    Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

NOW COMES Plaintiff Arielle Whitaker ("Ms. Whitaker" or "Plaintiff") and hereby complains and alleges against Defendant Castle Branch, Inc. ("Defendant") for violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C §§ 12101 *et seq.* ("ADA") and for wrongful discharge in violation of public policy based on N.C. Gen. Stat. § 143-422.1 *et seq.*

### PARTIES, JURISDICTION, AND VENUE

1. At all relevant times, Plaintiff was a resident of Brunswick County, North Carolina.

2. Defendant is a North Carolina corporation with its principal place of business located at 1844 Sir Tyler Drive, Wilmington, North Carolina 28405.

3. This Court has original jurisdiction under 28 U.S.C. § 1331 over the Plaintiff's claims under the ADA, 42 U.S.C §§ 12101 *et seq.* because the claims arise under the laws of the United States.

4. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims for WDPP because they arise out of the same nucleus of operative facts as the federal claims. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in this district.

6. At all relevant times, Defendant was an "employer" as defined by the ADA, 42 U.S.C §§ 12101 *et seq.*

7. 7. At all relevant times, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C §§ 12101 *et seq.*

8. Plaintiff has satisfied her obligation to exhaust her administrative remedies by timely filing Charge(s) of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation, (Charge No. 433-2021-01176).

9. On, the EEOC issued a Notice of Right to Sue for Charge No. 433-2021-01176 on September 28, 2021 and Plaintiff timely brought this action within ninety (90) days of her receipt thereof.

10. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

**FACTUAL BACKGROUND**

11. Ms. Whitaker is an African-American female who has been diagnosed with Autism Spectrum Disorder, Level 1 ("ASD1").

12. ASD1 is a "disability" within the meaning of the ADA.

13. ASD1 is a communication disorder that substantially limits Ms. Whitaker's ability to communicate, engage in face-to-face communications, initiate conversations, and to respond as expected.

14. Ms. Whitaker receives support from professional services to aid her with her ASD1, such as vocational rehabilitation services to prepare for job interviews and support from TEACCH to assist with other communication needs.

15. Communicating, initiating conversations, and responding to conversations are major life activities.

16. Defendant hired Ms. Whitaker as clinical screening specialist on or around June 15, 2020.

17. Ms. Whitaker was a good employee and performed her job well.

18. Ms. Whitaker's primary job responsibility was to screen documents submitted by medical students and nursing students to ensure that all documents were in order before the students started clinical rotations.

19. After she was hired, Ms. Whitaker informed her supervisor, Emma Walker, that she had Autism.

20. Ms. Whitaker also experienced severe complications due to uterine fibroids, that caused problems with her reproductive system, urinary tract, and other organs.

21. On or around January 4, 2021, Ms. Whitaker was out of work for an OB-GYN appointment. She provided Defendant with documentation about the need for medical leave the same day.

22. Also on or around January 4, 2021, Ms. Whitaker made a request to work from home for medical reasons.

23. Ms. Whitaker continued to be treated by her healthcare providers on January 6 and 27, 2021 and February 4, 2021 and provided documentation to Defendant regarding the same. She incurred absences from work as a result of her medical condition and treatment.

24. On or around January 8, 2021, Ms. Whitaker was placed on a 30-day performance improvement plan ("PIP") for alleged "unprofessional" communication on Defendant's instant messaging platform.

25. During the PIP meeting, at which Walker and a human resources representative, Dana Digit, were present, Ms. Whitaker reminded them that she had Autism and that she was not sure how her communications were unprofessional.

26. Before she signed the PIP, Ms. Whitaker asked if someone could explain to her what type of messages were considered unprofessional, she requested that one of her peers be a sounding board for her to vet her communications, and she also requested that someone be present with her for disciplinary meetings.

27. These requests made by Ms. Whitaker constitute requests for reasonable accommodation(s).

28. Walker and Digit did not give Ms. Whitaker a response to her requests, and instead insisted that she sign the PIP. They also told Ms. Whitaker that she had to sign the PIP in order for her work-from-home request to be granted.

29. On the same day the PIP was communicated, Ms. Whitaker was granted her work-from-home request.

30. However, Defendant granted the request based on Covid-19 reasons because it would be "easier" than granting it for the reasons requested by Ms. Whitaker and her healthcare providers requested.

31. Moving forward, no peer was provided to vet communications with Ms. Whitaker, per her request. No further training or information was given to Ms. Whitaker about communication style or strategies.

32. The 30-day PIP expired on February 7, 2021.

33. During the PIP's duration, no other concerns about Ms. Whitaker's communications were raised by Defendant.

34. In fact, during the 30-day period, Walker told Ms. Whitaker during calls and emails that Ms. Whitaker was meeting or exceeding her performance quotas.

35. Ms. Whitaker satisfied the terms of her PIP during the 30-day effective period.

36. On February 22, 2021, Ms. Whitaker attended a medical appointment with her OB-GYN surgeon and the decision was made to operate on Ms. Whitaker's fibroids. Surgery was scheduled for April 6, 2021.

37. On February 22, 2021, Ms. Whitaker informed Walker of her surgery date and requested a medical leave of absence for her April 6, 2021 surgery.

38. On February 24, 2021, Ms. Whitaker was called by Walker, Digit, and Allison Cauley from human resources. Ms. Whitaker was informed during the call that her employment was being terminated for unprofessional communication in instant messages.

39. Despite Ms. Whitaker's previous accommodation request to have someone present with her in disciplinary meetings, no one else was present as a resource, representative, or intermediary for Ms. Whitaker.

40. When Ms. Whitaker asked what messages were unprofessional, she was told that "the fact you have to ask that question is unprofessional in itself."

41. Ms. Whitaker later received a termination letter from Defendant in the mail. The letter does not indicate the reason for her termination.

42. Ms. Whitaker's termination caused her significant emotional and physical distress in that she experienced significant anxiety about the termination and her subsequent job search, experienced sleep disruption, and underwent treatment at Delta Behavioral Health for her symptoms.

**COUNT I**
**Discrimination and retaliation in violation of the**
**Americans with Disabilities Act of 1990, as amended (42 U.S.C §§ 12101 *et seq.*)**

43. The foregoing paragraphs are incorporated herein by reference.

44. Plaintiff is a "person" and an "employee", and Defendant is an "employer" and "covered entity" as those terms are defined by 42 U.S.C. § 12111.

45. Plaintiff has a "disability" as that term is defined at 42. U.S.C. § 12102 in that she has impairments that limited one or more of her major life activities.

46. Defendant otherwise perceived Plaintiff as disabled at the time of her termination and in the lead up to Plaintiff's termination.

47. Plaintiff's performance met and/or exceeded any reasonable expectations of Defendant's for her role.

48. Plaintiff was qualified for her position and could perform the essential functions of her job at all relevant times, with or without a reasonable accommodation.

49. Plaintiff requested that:

   a. Someone explain to her what type of messages were considered unprofessional;

   b. one of her peers be a sounding board for her to vet her communications;

   c. someone be present with her for disciplinary meetings;

   d. to work from home due to her medical condition; and

   e. for a medical leave of absence relating to her upcoming surgery.

50. These requests qualified as a request for reasonable accommodation under the ADA.

51. With the requested accommodation(s), Plaintiff would have been able to perform all of the essential functions of her job.

52. Defendant did not engage in the interactive process relating to Plaintiff's requests for reasonable accommodations.

53. Defendant did not provide reasonable accommodations for Plaintiff's disabilities.

54. Plaintiff suffered an adverse employment action when the Defendant terminated her employment on February 26, 2021, after she requested reasonable accommodations.

55. The alleged reason for Plaintiff's termination was because Ms. Whitaker did not communicate professionally, despite Ms. Whitaker having ASD1, a communication disorder.

56. Thus, Ms. Whitaker's termination was because of her disability.

57. Defendant terminated Plaintiff because of her real or perceived disabilities as it relates to her real or perceived disabilities because Defendant made granting her work from home request contingent on her signing the PIP and terminated her employment four days after she notified Defendant of her need for time off due to surgery.

58. Defendant violated the Americans with Disabilities Act ("ADA") by treating Plaintiff differently from her peers in the terms and conditions of her employment, refusing to grant her reasonable accommodation requests, and ultimately terminating her employment.

59. Defendant further violated the ADA by terminating Plaintiff's employment in retaliation for Plaintiff exercising her statutory right to request reasonable accommodation(s).

60. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

61. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of the Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## COUNT II
**Wrongful Discharge in Violation of Public Policy ("WDPP")**

62. The foregoing paragraphs are incorporated herein by reference.

63. The public policy of North Carolina, as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. §§ 143-422.1 et seq. ("NCEEPA") states, "[i]t is the

public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . handicap."

64. Defendant violated the public policy of North Carolina by terminating Plaintiff based on her disability and protected conduct.

65. Defendant violated the public policy by terminating Plaintiff after she exercised her rights and engaged in protected activity.

66. Such conduct is injurious to the public policy of the State of North Carolina.

67. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

68. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

69. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court enter judgment in her favor and grant her the following relief:

1. An Order awarding Plaintiff damages for Defendant's violation of the ADA, including backpay, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the ADA;

2. An Order awarding Plaintiff damages for Defendant's WDPP, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violation of North Carolina state law.

3. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

4. An Order awarding Plaintiff punitive damages for Defendant's willful and malicious conduct;

5. An Order awarding Plaintiff the costs of this action;

6. An Order awarding Plaintiff reasonable attorneys' fees;

7. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

8. An Order granting any other necessary or appropriate relief to which Plaintiffs are entitled under the law.

**JURY TRIAL DEMAND**

Plaintiff Arielle Whitaker demands a trial by jury for all issues of fact.

This the 27th day of December, 2021.

/s/ Nicole K. Haynes
L. Michelle Gessner (NC Bar No. 26590)
Nicole K. Haynes (NC Bar No. 47793)
GESSNERLAW, PLLC
1213 Culbreth Drive, Suite 426
Wilmington, North Carolina 28405
Telephone: (704) 234-7442
Facsimile: (980) 206-0286
Email: michelle@mgessnerlaw.com
Email: nicole@mgessnerlaw.com

*Attorneys for Plaintiff*